ROBERT B. SYKES (#3180)
    bob@sykesmcallisterlaw.com
RACHEL L. SYKES (#11778)
    rachel@sykesmcallisterlaw.com
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah  84111
Telephone No. (801) 533-0222
***Attorneys for Plaintiff***

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | | |
|---|---|---|
| GUY GAILEY, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| RYLEE MARBLE, an Ogden police officer, | ) | Judge _____ |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Guy Gailey, through counsel, complains against Defendant as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which the Plaintiff Guy Gailey ("Gailey") seeks relief for Defendants' violation of his rights guaranteed by the United States Constitution, specifically the Fourth Amendment.  These rights are further secured by the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah.  Gailey seeks compensatory and punitive

damages; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This action also arises under the constitution, law, and statutes of the State of Utah.

<u>JURISDICTION AND VENUE</u>

1.     This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth Amendment to the Constitution of the United States, and 42 U.S.C. §§ 1983, 1985, and 1988.

2.     This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3.     The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Northern Division. Venue is therefore proper under 28 U.S.C. § 1391.

4.     This Court also has supplemental jurisdiction over claims of excessive force under Article I §14 of the Utah Constitution.

5.     Plaintiffs are seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

6.     This Court therefore has jurisdiction for trial of the above captioned matter.

## PARTIES

7.      Plaintiff **Guy Gailey** is a citizen of the United States of America and is a resident of Weber County, State of Utah.

8.      Defendant **Rylee Marble** ("Marble") is an Ogden City police officer, presumed to be a citizen of the United States of America, and presumed to be a resident of Weber County, State of Utah.

9.      At the time the acts upon which this Complaint are based occurred, **Defendant Marble** was acting as a police officer employed by the Ogden City Police Department ("OPD").   This action is brought against Defendant Marble in his individual capacity.  His authority to act was derived from Utah State law and/or the commands and directives of his superiors.  All of his acts listed in the following paragraphs were performed under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah and Weber County.

## FACTUAL ALLEGATIONS

10.     In the early morning of April 6, 2017, at approximately 2:30 a.m., Gailey was riding his bike southbound on Harrison Blvd. in Ogden, on the sidewalk.

11.     Officer Connors ("Connors"), heading north on Harrison Blvd. in his marked police vehicle, passed Gailey, but then turned around, apparently intending to stop Gailey for a traffic infraction, i.e. riding his bike the wrong way on a sidewalk.

12.      Marble, in his own police vehicle, joined Connors in attempting to apprehend Gailey.

13.     After some minutes, and a few seconds' distance from the officers, Gailey stopped, got off his bike, and said "I give up.  I'm done," and "assumed the position" (i.e., got on the ground face down with his hands on his head).

14.     This occurred several seconds before the arrival of Marble and the other officers.

15.     A few seconds later, Marble arrived, exited his vehicle, and ran towards Gailey, shouting at him after Gailey was on the ground.

16.     Although Gailey was already face-down on the ground with his hands on his head, Marble came down hard on Gailey, kneeing him in the back with the full weight of his body behind his knee.  In other words, Marble suddenly and violently drove his knee into Gailey's back, with all of his weight behind it.

17.     Marble's action broke three of Gailey's ribs and punctured his lung, causing immediate and serious pain and injuries.

18.     After this violent attack, Gailey screamed in pain, complaining loudly that he needed immediate medical attention.

19.     The officers all mocked and taunted Gailey, saying such things as "you shouldn't have run from us," "why did you run from us," "aw, Guy, you aren't really hurt," "be a man," and similar taunts and disparaging statements.

20.     Marble and the other officers initially refused to summon medical help, telling Gailey that he was not really injured.

21.     This conduct by Marble and the other officers took place in the 7-10 minutes after the assault by Marble.

22.     There appear to have been at least three (3) squad cars and 3-5 officers at the scene during this apprehension.

23.     Based on knowledge and reasonable belief, all of the officers' vehicles had dashcams, and all of the officers personally had body cameras.

24.     Partial dashcam and bodycam footage of three (3) OPD officers has been provided to Plaintiff, after a GRAMA request.

25.     Based on reasonable knowledge and belief, Plaintiff believes that there is considerable additional bodycam and dashcam footage that has not been produced.

26.     If any bodycam or dashcam footage has been withheld, altered, or destroyed, the OPD and/or individual officers have violated the law, and are subject to sanctions for spoliation.

27.     Marble claims in his incident report on Gailey's arrest that evening that he slipped and fell on the grass, and therefore unintentionally kneed Gailey in the back.

28.     In the approximate 7 minutes of audio on the dashcam and body cam footage provided thus far, no one comments or talks about any alleged "slip" or "unintentional" injury to Gailey by Marble.

29.     Marble had prior police interactions with Gailey, where Gailey did not immediately stop when commanded by Officer Marble.

30.     On the night in question, Officer Marble was angry at Gailey for past non-compliance and intended to unlawfully inflict pain on Gailey during this forceful takedown.

31.     It is illegal, unconstitutional, and otherwise improper to use force on a non-violent misdemeanant who is neither resisting nor fleeing.

32.     Guy Gailey, at all relevant times after he put his bike down and assumed a prone position on his stomach, was a misdemeanant who was not resisting or fleeing.

33.     The use of force against someone like Gailey in such circumstance violates the Fourth Amendment right to be free from excessive force in an arrest.

34.     Officer Marble's actions likewise violate Gailey's Article I §14 rights under the Utah State Constitution to be free from excessive force in an arrest.

35.     The right of a non-violent misdemeanant to be free from excessive force is also clearly established in the Tenth Circuit.  In 2012, five (5) years before this incident, the Tenth Circuit held:

> So a reasonable officer would know based on his training that the force used was not justified.  Graham establishes that force is least justified against non-violent misdemeanants who do not flee or actively resist arrest.... Noe [the officer] had reason to believe Morris [the injured citizen] was, at most, a misdemeanant.  But Morris posed no threat to Noe or others, nor did he resist or flee.  Thus, based on the facts assumed by the district court, ***Morris's right to be free from a forceful takedown was clearly***

*established* under *Graham.* Defendant is not entitled to qualified immunity....

*Morris v. Noe,* 672 F.3d 1185, 1198 (10th Cir. 2012) (punctuation and case citations omitted; bracketed text and emphasis added).

36. It is also clearly established in the Tenth Circuit that "disproportionate force" is forbidden to be used on someone like Gailey. "It is... clearly established law in the Tenth Circuit that the use of ***disproportionate force to arrest*** an individual who is not suspected of committing a serious crime and who poses no threat to others constituted excessive force." *Perea v. Baca,* 817 F.3d 1198, 1204 (10th Cir. 2016) (citations omitted; emphasis added).

37. The officers at the scene, including Officer Marble, improperly turned off the sound of their body cameras after it became clear that Marble had seriously injured Gailey.

38. Turning off the sound on bodycams under these circumstances amounts to concealing evidence of Marble's misdeed, and at a minimum, is spoliation of evidence under Utah law, justifying severe sanctions against Marble and others.

39. After about 15 minutes or so, during which time Gailey writhed and cried out in excruciating pain, and had trouble breathing, Marble and other officers transported Gailey to McKay-Dee hospital in handcuffs.

40. In the emergency room, Gailey was diagnosed with three (3) broken ribs and a punctured lung.

41.     These injuries resulted from Marble's excessive force on the non-violent, compliant Gailey.

42.     Shortly after the emergency room diagnosis at McKay-Dee, Gailey was taken to surgery where his punctured lung was surgically repaired.

43.     Gailey stayed in the hospital, recovering, for 3 days.

44.     Gailey's medical bills for the stay were about $30,000.

45.     Marble's actions were willful, malicious, and reckless, and therefore punitive damages are justified.

## FIRST CAUSE OF ACTION

### ~ Excessive Force in Violation of the Fourth Amendment ~
### Cognizable Under 42 U.S.C. § 1983

46.     Plaintiff incorporates by reference all above allegations.

47.     The proper focus in determining the reasonableness of force used is on the events immediately confronting an officer when he decides to use force.

48.     Force, proportionately applied, is justified when a suspect is fleeing, violent, dangerous, or resisting arrest.

49.     Gailey had stopped fleeing and was lying face-down on the ground with his hands on his head ("assumed the position"), when Marble intentionally and forcefully plunged his knee into Gailey's back, seriously injuring him.

50.     No force is reasonable when a suspect is not resisting, is non-violent, and/or poses no threat to the officers or anyone else. Furthermore, force is not permitted at all when there is no need to use force.

51.     In this case, Gailey posed no immediate risk to the officers or anyone else, and thus there was no need to use force at all.

52.     The violence administered to Gailey by Marble was severe, resulting in three (3) broken ribs, a punctured lung, and emergency medical attention.

53.     The violations of Gailey's rights are actionable under 42 U.S.C. §1983, and Gailey is entitled to judgment against Marble in an amount to be proved at trial, plus costs and attorney fees pursuant to 42 U.S.C. § 1988.

54.     Gailey is entitled to punitive damages against Marble personally, as allowed by law, since Marble's actions were intentional, wanton, malicious, and oppressive.

## SECOND CAUSE OF ACTION

### ~ Excessive Force ~
### Cognizable Under Article I, §14 of the Utah Constitution

55.     Plaintiff incorporates by reference all above allegations.

56.     Gailey had abandoned his flight via bicycle from Officers Connors and Marble.

57.     Gailey had given up and placed himself on the ground, face down, with his hands on his head.

58.     Marble used excessive force in apprehending Gailey, in that he unnecessarily came down on Gailey with all of his weight and his knee into Gailey's back, breaking three of Gailey's ribs and puncturing his lung, even though Gailey had previously given up and placed himself face-down on the ground.

59.     Officer Marble's actions were a flagrant violation of Gailey's rights under Article I, §14 of the Utah Constitution.

60.     Gailey is entitled to punitive damages against Marble, as allowed by law, since his actions were intentional, wanton, malicious, and oppressive.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## REQUEST FOR RELIEF

WHEREFORE, Gailey demands judgment against Marble as follows:

1.     For general compensatory damages in an amount to be determined at trial;

2.     For special damages, such as medical bills, as are shown at trial;

3.     For punitive damages against Defendant as may be allowed by law;

4.     For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

5.     For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. § 1988; and

6.     For such other and further relief as the Court deems just and proper.

DATED this 28th day of June, 2017.

**SYKES MCALLISTER LAW OFFICES, PLLC**

*/s/ Robert B. Sykes*

ROBERT B. SYKES
RACHEL L. SYKES
*Attorneys for Plaintiff*

170629.Complaint.wpd

-11-